No. 1-00-1848 First Division

September 28, 2001

In Re
 MARRIAGE OF ) Appeal from the

) Circuit Court of

DENISE GIBSON-TERRY, ) Cook County. 

) 

Petitioner-Appellee, ) 

) No. 97 D 16959 

and ) 

)

RAYMOND J. TERRY,
 ) The Honorable

) Ronald W. Olson,

Respondent-Appellant. ) Judge Presiding. 

PRESIDING JUSTICE COHEN delivered the opinion of the court:

Respondent Raymond J. Terry appeals the denial of his motion to vacate a judgment of dissolution of marriage incorporating as part of the judgment an oral property settlement agreement reached between him and petitioner Denise Gibson-Terry.  On appeal Raymond alleges that: (1) his attorney entered into the settlement agreement without his consent and the trial court failed to inquire whether he had in fact consented to the agreement; (2) the parties clearly contemplated that the settlement agreement be reduced to writing and signed by the parties and that the lack of signatures thereby invalidates the agreement; (3) the trial court's judgment contains terms that vary from those stated by the parties' attorneys at the prove-up hearing; and (4) the settlement agreement was "hastily arranged," "unfair" and a product of his attorney's "coercion."  For the reasons set forth below, we affirm.

Raymond Terry and Denise Vaughan were married on April 22, 1986, in Chicago, Illinois.  The couple have two children: Amanda, born November 8, 1991, and Mitchell, born September 27, 1994.  Raymond and Denise lived together until October of 1997, when Raymond vacated the marital home and moved to Westchester, Illinois.  Denise and the two children remained at the marital residence in Burbank, Illinois.

On November 4, 1997, Denise filed a petition for dissolution of marriage claiming irreconcilable differences.  On November 19, 1997, attorney John R. Heying filed his appearance on Raymond's behalf, along with a response to the petition for dissolution.  During the course of the next two years, while the parties engaged in discovery and attempted to reach a negotiated settlement, Raymond retained no fewer than three attorneys to represent him in this matter.  A pretrial conference was held on July 26, 1999, at which the parties agreed to proceed with trial.

Trial began the morning of October 20, 1999.  Both parties gave their opening statements and stipulated to the following: (1) Denise's defined benefit plan was valued at $28,200; (2) Raymond's defined benefit plan was valued at $152,325; (3) Raymond's severance trust fund was valued at $53,770.13; (4) Denise's 401K plan was valued at $5,227.19; and (5) the marital home located in Burbank, Illinois, was valued at $141,000.  The parties further stipulated to: (6) an outstanding mortgage on the marital home in the amount of $100,000; (7) a parenting agreement, signed by both parties, granting custody of the two children to Denise and outlining a visitation schedule for Raymond; and (8) a report compiled by a clinical psychologist pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/604(b) (West 2000)).  

Because of the numerous stipulations, the only issues that remained for trial were the classification and distribution of marital property and debt.  Denise was the first to be called to testify in support of her petition for dissolution.  She proceeded to testify until the trial court called a recess for lunch.  During the recess, the parties and their attorneys conducted settlement negotiations.  The negotiations proved fruitful.  After returning from lunch, the parties informed the trial court that an agreement had been reached.  A prove-up hearing was then conducted and the terms of the settlement agreement were read into the record by the parties' attorneys.  The principal terms of the agreement were: (1) both parties waived maintenance; (2) Denise would be awarded Raymond's severance plan, pay all taxes and penalties and use the funds to pay all marital debts, including the outstanding balance on Raymond's Discover credit card; (3) any debts not covered by the severance package plan would be the debt of the party incurring it; (4) Raymond would be liable for the outstanding balance on his Visa credit card; (5) the marital home would be awarded to Raymond via a vendor's lien with no interest and payable upon Denise's remarriage, the sale of the home by Denise, Mitchell reaching 18 years of age or earlier at Denise's discretion; (6) Denise would be awarded the marital home subject to the vendor's lien, the mortgage and all taxes; (7) Denise would receive $20,802 from her defined benefit plan, $5,000 from her 401K plan and $63,148 from Raymond's defined benefit plan; (8) the remaining balances of Denise's and Raymond's retirement accounts would be divided 50-50; and (9) Raymond would pay $800 a month in child support and half of Amanda's and Mitchell's parochial school tuition.

Denise's attorney advised the trial court that a written judgment would be prepared, signed by the parties and subsequently presented for the court's review.  The trial court then ordered counsel to submit the proposed judgment within 28 days along with other documents.  On November 1, 1999, a "Stipulation and Request to Hear Uncontested Cause" was filed and signed by both parties, stipulating "that all matters pending between [them] ha[d] been settled, agreed and compromised, freely and voluntarily after full disclosure."  A proposed judgment was submitted to the trial court for entry on November 24, 1999, and a hearing was held on the same date.  At the hearing, Raymond had retained yet another attorney, Jeffrey Vollen, to represent him.  However, Mr. Vollen was not present at the hearing and failed to file an appearance.  Instead another attorney, Peter Regulski, appeared on Raymond's behalf.  Because Mr. Regulski was not professionally affiliated with Mr. Vollen and had similarly not filed an appearance, the trial court refused to entertain any of Mr. Regulski's arguments.  Raymond and his attorney of record, Nicholas Spina, were present, however.  Mr. Spina acknowledged Raymond's interest in obtaining new counsel.  The trial court then asked Raymond if he had anything that he wanted to address and Raymond responded, "[o]ther than I want to change my lawyer, no."  Based on the above, the trial court reserved entry of the judgment and stated that it would review the proposed judgment and the trial transcript prior to making a determination. 

On December 10, 1999, the trial court entered judgment incorporating the property settlement agreement that had been reached between Raymond and Denise in open court on October 12, 1999, the "Stipulation and Request to Hear Uncontested Cause" dated November 11, 1999, and the subsequent written judgment.  A copy of the judgment was submitted to Raymond's attorney of record, Mr. Spina, for Raymond's signature.  Raymond refused to sign the judgment.  On December 17, 1999, Mr. Vollen filed his appearance and a motion to vacate the property settlement agreement.  In the motion to vacate, Raymond alleged that he did not authorize Mr. Spina to negotiate a marital settlement agreement on his behalf and he did not understand that a marital settlement agreement was being negotiated, nor did he agree to the provisions of the marital settlement agreement.  Raymond further alleged that if he did in fact engage in conduct that indicated his assent to the property settlement agreement he did so under the duress of his attorney, Mr. Spina.  Lastly, Raymond alleged that the provisions of the settlement agreement were unconscionable.  

Denise and Mr. Spina filed responses to the motion to vacate.  A hearing was held on April 20, 2000.  Both parties' attorneys had an opportunity to present their arguments before the trial court.  The trial court requested the transcript, a copy of the motion to vacate and legal authority and reserved its ruling until after it had an adequate opportunity to review these materials.  On April 26, 2000, the trial court entered an order denying Raymond's motion to vacate.  This appeal followed.  

I. Judgment of the Trial Court

In his first argument, Raymond alleges that the trial court erred in incorporating the property settlement agreement into its judgment.  Raymond claims that: (1) his attorney entered into the agreement without his consent and the trial court failed to inquire at the prove-up hearing whether he did in fact consent to the agreement; (2) the parties intended that the settlement agreement be reduced to writing and signed by the parties; and (3) the trial court's judgment contains terms that vary from those stated by the parties' attorneys at the prove-up hearing.  Although Raymond frames the issue in this case as "whether the trial court erred by incorporating a marital settlement in its judgment," the issue is whether such an agreement was ever reached.

"'Whether a contract exists, its terms and the intent of the parties are questions of fact to be determined by the trier of fact. [Citation].'"  
In re Marriage of Kloster
, 127 Ill. App. 3d 583, 586 (1984).  We will not reverse the judgment of the trial court unless it is contrary to the manifest weight of the evidence.  
Kloster
, 127 Ill. App 3d at 586.

A. Lack of Consent

Raymond initially contends that his attorney entered into the property settlement agreement without his consent and without the trial court inquiring at the prove-up hearing whether Raymond did in fact consent to the agreement.  Raymond claims that he left in the middle of the settlement discussions and that while he was gone his attorney entered into the property settlement agreement without his consent.  Raymond also claims that he informed his attorney immediately after the prove-up hearing that he was not agreeing to the settlement.  Raymond further claims that had he been asked by the trial court whether he agreed to the terms of the property settlement agreement his answer would have been emphatically "no."

"Generally, a client is bound by the acts or omissions of his attorney within the scope of the attorney's authority."  
In re Marriage of Marr
, 264 Ill. App. 3d 932, 935 (1994).  "While an attorney's authority to settle must be expressly conferred, the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence that authority is lacking."  
Szymkowski v. Szymkowski
, 104 Ill. App. 3d 630, 633 (1982).  In a situation "where a party is present in court and permits his attorney to act on his behalf, the party may not subsequently deny his attorney's apparent authority."  
Marr
, 264 Ill. App. 3d at 935.  

The record reveals that Raymond was present in court when his attorney entered into the property settlement agreement on his behalf.  During the course of the prove-up hearing, Raymond did not voice an objection to the agreement,  he did not inform the court that he misunderstood any part of the agreement, and in fact, he participated in the recitation of the agreement by clarifying terms regarding waiver of maintenance and the division of certain property, namely, which automobile and which of several paintings he was to receive.  Furthermore, at the hearing concerning the proposed judgment, Raymond had the opportunity to contest the agreement.  However, when Raymond was asked by the trial court whether he had anything that he wanted to address, he responded "[o]ther than I want to change my lawyer, no."

While in cases such as this, where an oral property settlement agreement is placed on the record, perhaps a better procedure would have been for the trial court to call both parties to the stand and question them concerning their capacity and desire to consent to the agreement, nevertheless, the trial court's failure to ask Raymond whether he consented to the agreement is not dispositive here.  Because he sat silently and permitted his attorney to enter into the property settlement agreement on his behalf, Raymond is estopped from denying the existence of the property settlement agreement.  
Marr
, 264 Ill. App. 3d at 935; 
Szymkowski
, 104 Ill. App. 3d at 633.  We therefore find that Raymond's argument is without merit.

B. Reduced to Writing

Raymond next contends that there was no valid settlement agreement because the parties intended that the settlement agreement be reduced to writing and signed by the parties, and neither party signed the written agreement.  

Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act encourages parties to enter into 
written or oral
 agreements "containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children."  750 ILCS 5/502(a) (West 2000).  The fact that the parties entered into an oral agreement that is not subsequently reduced to writing does not alter the binding effect of the oral agreement.  
Marr
, 264 Ill. App. 3d at 935.  "[W]here the parties have assented to all the terms of the oral agreement the mere reference to a future written document does not negate the existence of a present contract * * *."  
Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.
, 114 Ill. 2d 133, 143 (1986).

Here, there is no evidence in the record of the parties' supposed intention that a signed written agreement be a condition precedent to the binding effect of the oral agreement.  At trial, Denise's attorney stated that she would "prepare the written judgment, have the parties sign it, with Mr. Spina's approval" and then submit the written judgment to the court for entry.  The court requested that counsel submit the proposed judgment order in 28 days.  What Raymond is characterizing as a "written agreement" is not actually a separate agreement, but a typed copy of the judgment.  See 
In re Marriage of Carlson
, 186 Ill. App. 3d 635, 638 (1989) (the parties did not intend to reduce the oral agreement to writing, but intended to present a typed copy of the judgment to the trial court).  As such, Raymond's argument is without merit.

C. Varying Terms

Raymond also contends that the trial court's judgment contains terms that vary from those stated by the parties' attorneys at the prove-up hearing.  Specifically, Raymond alleges that the judgment states that Denise's pension plan has a value of $30,000 whereas at the prove-up hearing the parties' attorneys stated that Denise's pension plan had a value of $20,800.  According to Raymond, this error resulted in Denise receiving "approximately $10,000 more than a 50-50 split of the marital portions of the pension plan of the parties."

Typically an issue is waived on appeal unless a timely objection is made at trial and is specifically raised in a written posttrial motion.  
People v. Reid
, 136 Ill. 2d 27, 38 (1990).  Our supreme court has outlined two purposes behind the waiver rule.  "First, timely objections allow the circuit court to promptly correct any error.  [Citation.]  Second, a party who fails to object cannot obtain the advantage of receiving a reversal by failing to act."  
Reid
, 136 Ill. 2d at 38.  While we recognize that under the peculiar facts of this case Raymond could not have objected to the varying valuation of Denise's pension plan in the judgment until after trial, we nevertheless find that he has waived the issue on appeal.

At trial, a stipulation was entered valuing Denise's pension plan at $28,200.  However, when Denise's attorney recited the terms of the oral settlement agreement at the prove-up hearing the attorney either misstated the value of the pension plan at $20,800 or the court reporter committed an error in transcription.  Raymond possibly failed to object to this discrepancy because of a transcription error.  The proposed judgment incorporating the property settlement agreement was then prepared by Denise's attorney.  The proposed written settlement agreement contained yet another variance, valuing Denise's pension plan at "approximately $30,000."  Raymond failed to object to this valuation at the hearing on November 24, 1999, concerning the entry of the proposed judgment.

More significant is Raymond's failure to raise the issue specifically in his written posttrial motion.  In his motion to vacate, Raymond stated only that the agreement awarded Denise her pension plan valued at $30,000.  This statement alone is not enough to preserve the issue on appeal.  See 
People v. Pace
, 225 Ill. App. 3d 415, 432 (1992) ("[c]atch-all arguments in post-trial motions do not preserve unspecified claims of error on appeal").  Because Raymond failed to object to the variance in the judgement concerning the valuation of Denise's pension plan, by posttrial motion or otherwise, we deem the issue waived.

Based on the above, we find that the parties entered into a valid, enforceable marital settlement agreement.      

II. Denial of Motion to Vacate

In his second argument, Raymond alleges that the trial court erred in denying his motion to vacate the judgment for dissolution of marriage incorporating the property settlement agreement.  In support of his argument, Raymond claims that the settlement agreement was "hastily arranged," "unfair" and a product of his attorney's "coercion."

"When a party seeks to vacate a property settlement incorporated in a judgment of dissolution of marriage, all presumptions are in favor of the validity of the settlement."  
In re Marriage of Gorman
, 284 Ill. App. 3d 171, 180 (1996).  A settlement agreement is not typically subject to appellate review because an agreed order "is a recordation of the agreement between the parties and * * * not a judicial determination of the parties' rights."  
In re Haber
, 99 Ill. App. 3d 306, 309 (1981).  However, "[a] settlement agreement can be set aside if it is shown that the agreement was procured through coercion, duress or fraud, or if the agreement is unconscionable."  
Gorman
, 284 Ill. App. 3d at 180.  

A. Unconscionability 

Raymond's claims that the settlement agreement was hastily contrived and unfair raise questions of unconscionability.  "'"[F]airness" and other similar standards * * * have been replaced by the standard of unconscionability.'"  
In re Marriage of Foster
, 115 Ill. App. 3d 969, 971 (1983), quoting Ill. Ann. Stat., ch. 40, par. 502, Historical & Practicing Notes, at 400 (Smith-Hurd 1980).  "Unconscionability exists where there is '"an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" [Citations.]" 
 In re Marriage of Steadman
, 283 Ill. App. 3d 703, 709 (1996).  The fact that an agreement "'merely favors one party over another does not make it unconscionable. [Citation.]'"  
Gorman
, 284 Ill. App. 3d at 181.  "To rise to the level of being unconscionable, the settlement must be improvident, totally one-sided or oppressive."  
Gorman
, 284 Ill. App. 3d at 182.

There are two types of unconscionability: (1) procedural unconscionability, which "involves impropriety during the process of forming a contract that deprives a party of a meaningful choice;" and (2) substantive unconscionability, which "relates to situations where a clause or term in a contract is allegedly one-sided or overly harsh."  
Bishop v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 1196 (2000).  Raymond does not allege that the terms of the marital settlement agreement were "totally one-sided or oppressive."  He alleges only the procedural claim that the steps leading to the formation of the agreement deprived him of a meaningful choice.  Raymond argues that the parties reached the agreement in an atmosphere sufficiently hostile and coercive to cause him to be "deprived [of his] day in court."   Specifically, Raymond claims that the settlement agreement was "hastily arranged" in that after 13 years of marriage the settlement agreement was reached over a lunch break.  However, the number of hours spent negotiating is not a "
per se 
formulation of unconscionability." 
Steadman
, 283 Ill. App. 3d at 710.  Rather, significance lies in the fact that the parties negotiated at "arm's length with the aid of counsel."  
Steadman
, 283 Ill. App. 3d at 710.

Here, the case had been in the trial court for nearly two years when a final settlement was reached.  The "negotiations over lunch" that resulted in the property settlement agreement were not the first negotiations into which the parties had entered.  Indeed, the record reflects at least two prior years of settlement negotiations.  The record further reflects that at trial the parties entered into numerous stipulations regarding the value of their assets and debts.  As a result, the only unresolved issue for trial and thus subject to settlement was the nature and disposition of the parties' property.  During the negotiations leading to the ultimate resolution of this issue by settlement, both parties were represented by counsel.  

Raymond now urges this court to consider his affidavit avowals that he became upset and left in the middle of the negotiations, that he disavowed the agreement his attorney entered into while he was gone, that he refused to sign the proposed agreement and that he ultimately retained alternate counsel.
(footnote: 1)  "It is well established that determinations by the trier of fact as to the credibility of parties are given great deference."  
In re Marriage of McHenry
, 292 Ill. App. 3d 634, 641 (1997).   

In this case, the trial court conducted a hearing on Raymond's "motion to vacate marital settlement agreement."  Both parties' attorneys were allowed to argue.  During the hearing the following exchange took place:

"MR. VOLLEN [Raymond's attorney]: My client's position is that he never agreed to the terms of the agreement that were announced to the Court, that he told his lawyer Mr. Spina, at lunch that he would not agree to the terms, that he told Mr. Spina after the purported agreement that was announced to the Court he told –

THE COURT: You have the transcript with everything on the record?  
I don't know if I accept that.  These proceedings were outside of the Court, the matter was settled and we completed it at that time.  The matter was settled.
"  (Emphasis added.)

Despite this exchange, the trial court considered Raymond's motion to vacate, Denise's and Mr. Spina's responses, the transcript and legal authority prior to making its determination.  A subsequent hearing was held on April 26, 2000.  At this hearing the court stated, "I reviewed your argument and have gone over the transcript completely.  Counsel, we had done part of the trial.  After lunch the matters changed.  We entered prove up at that time.  I find no basis, Counsel, to upset that judgment."  The record does not support a determination that the trial court erred in its assessment of Raymond's credibility.  Rather, the record reflects that the parties negotiated at arm's length while represented by counsel.  
Steadman
, 283 Ill. App. 3d at 710.  Raymond's claim of unconscionability must therefore fail.    

B. Coercion

Raymond next argues that, assuming he did enter into an oral settlement agreement, he did so because his trial counsel coerced him into settling his case.  Coercion includes "'the imposition, oppression, undue influence, or the taking of undue advantage of the stress of another, whereby that person is deprived of the exercise of her free will.'" 
In re Marriage of Gorman
, 284 Ill. App. 3d at 180, quoting 
In re Marriage of Flynn
, 232 Ill. App. 3d 394, 401 (1992).  Because stress is common in dissolution proceedings, stress alone is not enough.  
In re Marriage of Flynn
, 232 Ill. App. 3d 394, 401 (1992).  The person asserting coercion bears the burden of proving it by clear and convincing evidence.  
Gorman
, 284 Ill. App. 3d at 180.     

In his motion to vacate, Raymond specifically alleges that his trial attorney, Mr. Spina, advised him "that he had no alternation [
sic
] but to accept the terms of the marital settlement agreement."  According to Raymond, "Mr. Spina advised [him] that he had done everything which could be done and that [he] had to accept the agreement."  Mr. Spina filed a response to Raymond's motion to vacate alleging that an agreement had been reached with the consent of all parties.  Mr. Spina further alleged that Raymond "knew, understood and consented" to the settlement agreement.  Similarly, Denise filed a response to Raymond's motion to vacate asserting that Raymond entered into the settlement agreement "willingly and with full knowledge of the contents of the agreement."

"It is the function of the circuit court to weigh the evidence, determine the credibility of the witnesses, and to resolve any conflict in their testimony."  
People v. Daniels
, 272 Ill. App. 3d 325, 334 (1994).  Raymond's conduct at trial and at the prove-up hearing supports Denise's and Mr. Spina's assertions that he entered into the marital settlement agreement willingly and knowingly.  Although Raymond's affidavit directly contradicts those of Denise and Mr. Spina, the trial court's comments at the hearing on the motion to vacate and the subsequent hearing clearly demonstrate that it found Raymond's affidavit incredible.   

There is ample evidence in the record to support the trial court's determination that the marital settlement agreement was neither unconscionable nor the result of coercion on the part of Raymond's trial attorney.  Indeed, Raymond does not deny he willingly signed the "Stipulation and Request to Hear Uncontested Cause," stipulating that "all matters pending between [him and Denise had] been settled, agreed and compromised, freely and voluntarily after full disclosure."  Raymond has failed to present any evidence, let alone clear and convincing evidence, that his attorney coerced him into entering into the property settlement agreement.  
Gorman
, 284 Ill. App. 3d at 180.  

It is probable that Raymond had a change of heart following the prove-up hearing and subsequently decided that he wanted to have the agreement set aside.  However, "a settlement agreement incorporated into a judgment for dissolution will not be vacated based on a mere change of heart of one of the parties."  
In re Marriage of Morris
, 147 Ill. App. 3d 380, 395-96 (1986).  For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.  

Affirmed. 

McNULTY and TULLY, JJ., concur.

FOOTNOTES
1:

 While Raymond did obtain Mr. Vollen to represent him on his "motion to vacate marital settlement agreement," Raymond never fired his trial attorney, Mr. Spina.  The appearance filed by Mr. Vollen on December17, 1999, only states that Mr. Vollen was representing Raymond as "additional or trial counsel" and not "substitute counsel."  There is no evidence in the record that Mr. Spina withdrew his appearance as attorney of record for Raymond.