JONATHAN LUETHKE, APPELLEE, V.
RONALD SUHR ET AL., APPELLANTS.
650 N.W.2d 220

Filed August 9, 2002.  No. S-00-396.

Stephanie Frazier Stacy, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

Michael A. Nelsen, of Hillman, Forman, Nelsen, Childers & McCormack, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Appellee, Jonathan Luethke, filed a personal injury lawsuit against the appellants, Ronald Suhr, Sandi Suhr, and Marci Kloppel, after an automobile injury accident involving Luethke and Kloppel. While trial was pending, the parties' counsel reached a settlement agreement; the settlement agreement was not reduced to writing, and subsequently, the appellants filed an amended answer and cross-petition to enforce the agreement. The district court bifurcated the proceedings between the settlement agreement enforcement claim and Luethke's personal injury cause of action. In a bench trial of the settlement enforcement claim, Luethke testified over the appellants' evidentiary objections that he did not give his attorney the authority to settle his claim. The district court concluded that because the attorney-client agency relationship regarding settlement agreements does not include apparent authority to settle, the appellants could not enforce the settlement agreement. The appellants appealed the judgment of the district court. The court has yet to try the personal injury claim.

## FACTUAL BACKGROUND

On June 27, 1995, Luethke was injured in an automobile accident. Attorney Mary Wickenkamp filed suit on Luethke's behalf on July 14, 1997, alleging in the petition that Kloppel, driving a truck owned by Ronald Suhr and Sandi Suhr, negligently struck the rear of Luethke's vehicle while he waited to make a left-hand turn at the intersection of Nebraska Highway 15 and Waverly Road in Seward County. The appellants retained attorney Alan Plessman to represent them in the suit filed by Luethke.

On July 20, 1998, the day before a scheduled pretrial conference, Plessman faxed the following letter, in pertinent part, to Wickenkamp:

I hereby offer to pay to you and your clients and any subrogees or lienholders we have notice of, that sum of $16,000.00, in exchange for a complete release of liability for our insureds and Continental Western Insurance Company; and a dismissal with prejudice of the pending suit, with all parties to bear their own costs and fees.

[The insurance company] gave me that authority to be accepted by you before 5:00 p.m. today. Thereafter it is withdrawn. So, if this is a deal, fax me back a note to that effect.

Later that same day, Wickenkamp responded in a faxed letter, in pertinent part:

I have not been able to make contact with my client by 5:00 to get positive authority to accept your offer of $16,000. I am willing to recommend your offer to my client, but I need to meet with Jon to discuss it. As we have discussed before, this young man has a developmental disability and I need to make certain his decision in this matter is informed.

That same day, Plessman responded to Wickenkamp and extended the offer until 9 a.m. the following morning.

On July 21, 1998, Wickenkamp accepted Plessman's offer via faxed letter: "My client will accept the offer. . . . Thanks for your cooperation in getting this done. I will assume that we are not meeting today with the Judge [for pretrial conference] and will call his office this morning." The district court judge's docket notes for July 21, 1998, read: " 'Case settled. Paperwork coming.' "

Plessman sent settlement documents to Wickenkamp on July 21, 1998, with a letter stating: "Enclosed are settlement papers, I need back after they're signed, along with directions on how to cut checks for payment of the $16,000.00. Once I know that, I can get the drafts in a day or so." In a letter dated July 29, 1998, Wickenkamp responded:

Thank you for getting me the settlement documents so promptly. I've sent them on to my client. His uncle wants to review them with me and Jon as well. I'm on my way out of town and have a meeting with them set after I come back. Please understand it is not a problem. The uncle has been involved throughout this and just wants to make sure my client, who is somewhat disabled, understands everything. I do not anticipate any problem with the settlement, its just a matter of logistics. I will be in touch when I return.

The record provides no further correspondence between Plessman and Wickenkamp, and Plessman testified that the next

thing he received was Wickenkamp's motion to withdraw as counsel. Plessman never received executed settlement or dismissal documents.

On September 16, 1998, the district court judge filed a judge's note which asked: " 'Counsel: The paperwork, please?' " Wickenkamp's deposition, read into the record in part and accepted as a whole as exhibit 2, reveals that she withdrew as counsel in October 1998 after having her professional employment terminated by Luethke. On November 3, the district court judge filed another judge's note asking, " 'Mr. Plessman: What has become of the settlement we were told of back in July?' "

The district court granted the appellants leave to file an amended answer and cross-petition, which they subsequently filed, affirmatively stating that the parties had reached a settlement agreement and requesting that the court enforce that agreement. By this time, Luethke had retained his present counsel to replace Wickenkamp. The district court next granted the appellants' request to bifurcate the proceedings between Luethke's personal injury claim and the appellants' cross-petition to enforce the settlement agreement. The appellants hired substitute counsel for the settlement agreement bench trial because Plessman would testify at trial.

The appellants made a motion in limine prior to the start of the settlement enforcement hearing, seeking to prevent Luethke from testifying regarding the settlement agreement pursuant to Neb. Rev. Stat. § 7-107(2) (Reissue 1997). Section 7-107 states:

> An attorney or counselor has power . . . (2) to bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court . . . .

The district court overruled the appellants' motion in limine.

Plessman testified regarding the correspondence between himself and Wickenkamp about the settlement agreement. The court received and admitted into evidence, without objection, Plessman's and Wickenkamp's correspondence and the settlement documents drafted by Plessman. Because Wickenkamp did not

appear to testify, the parties agreed to deem her unavailable and read parts of her deposition into the record. In her deposition, Wickenkamp verified that Luethke retained her as his attorney in this litigation, that she notified Plessman by letter that "My client will accept the offer," and that she withdrew as counsel in October 1998 after Luethke terminated her employment. Wickenkamp did not testify as to the content of her conversations with Luethke, invoking attorney-client privilege, but stated that she and Luethke had spoken during the timeframe of the letters between herself and Plessman regarding settlement negotiations.

The appellants moved for a directed verdict at the close of their evidence, arguing that the evidence demonstrated that a settlement agreement between the parties was reached and that the appellants were entitled to enforce that agreement. The district court overruled the motion. Over the appellants' objection, the court heard Luethke testify about his interactions with Wickenkamp regarding the settlement agreement. Luethke testified that although Wickenkamp originally anticipated receiving $84,000 or $64,000 for Luethke's case, she urged him to accept a settlement of $16,500 because they were not making headway with the other numbers. Luethke stated that the only time he authorized Wickenkamp to settle the case for him was when she presented him with a $64,000 offer; she, however, urged him to refuse the offer because she felt he could get more. Luethke testified that he never agreed to settle the case for $16,000—not during a meeting alone with Wickenkamp and not during a subsequent meeting at his mother's house with Wickenkamp, his mother, himself, and his uncle Norman Schmitt present.

The court received testimony from Schmitt, also over the appellants' objection, regarding the meeting with Wickenkamp and their settlement agreement discussions. Schmitt testified that at no time during Wickenkamp's representation of Luethke did Schmitt understand her to have the authority to settle Luethke's case for $16,000.

The district court's "Judgment on Defense of Settlement Agreement" concluded:

> Upon consideration, I find in favor of plaintiff [Luethke]. Were we dealing with settlement negotiations between two non-lawyers, with one participant acting as the agent of yet

another non-lawyer, I would rule there was a binding settlement agreement.

While I fully appreciate Mr. Plessman's good faith belief he had a settlement agreement and also appreciate that I am causing some difficulty in the practice of lawyers concluding they have a settlement before they have obtained their respective clients' express commitments, I believe the law of attorney/client relationships properly does not include apparent authority in counsel to settle claims in the absence of the client's express commitment to the settlement. Lawyer/client relationship law does not allow for operation of the same apparent authority doctrine that it does in matters other than settlements. I wish I could reach the opposite conclusion, but I believe the wiser public policy and the law requires the ruling I make in this particular instance.

The district court supplemented its original order, expressly determining and directing that pursuant to the terms of Neb. Rev. Stat. § 25-705(6) (Supp. 1999), recodified as Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2000), there is no just reason for delay and that judgment should be entered as a final judgment on the appellants' claim seeking enforcement of the settlement agreement. See *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001).

The appellants then filed an appeal of the judgment of the district court, and pursuant to our authority to regulate the caseloads of the appellate courts, we moved this appeal to our docket.

## ASSIGNMENTS OF ERROR

The appellants assign, consolidated and restated, that the district court erred in (1) failing to direct a verdict in the appellants' favor at the close of the appellants' evidence; (2) receiving into evidence, over objection, testimony pertaining to the settlement agreement; (3) misapplying, misinterpreting, and disregarding Nebraska agency law; and (4) concluding that attorneys do not have apparent authority to bind their clients to settlement agreements.

## SCOPE OF REVIEW

When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion

reached by the trial court. *In re Grand Jury of Douglas Cty.*, 263 Neb. 981, 644 N.W.2d 858 (2002).

## ANALYSIS

This appeal requires us to consider when, and under what circumstances, a lawyer may bind his or her client to a settlement agreement entered into without express authority from the client. In order to answer this question, we must review a few well-settled principles unique to the practice of law and derived from the nature of the attorney-client relationship.

Nebraska law is clear that the decision to settle a lawsuit belongs to the client; because the client bears the risk when settling or refusing to settle a dispute, it is the client, not the lawyer, who should assess whether the risk is acceptable. *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999). Additionally, the Code of Professional Responsibility, Canon 7, EC 7-7, dictates the boundaries of an attorney's authority to settle claims without the client's express authority as follows:

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his or her own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on the lawyer. As typical examples in civil cases, it is for the client to decide whether to accept a settlement offer . . . .

We observed and noted these ethical considerations in *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985).

Thus, as a general rule, in this state and in a vast majority of other jurisdictions, lawyers may enter settlement agreements only when the client expressly authorizes the lawyer to do so. The ordinary employment or retainer of a lawyer to represent a client with respect to litigation does not of itself give the lawyer the implied or apparent authority to bind the client by a settlement or compromise of the claim; and, in the absence of express authority, knowledge, or consent, the lawyer cannot do so. A lawyer's execution of a settlement agreement without a client's knowledge or consent constitutes a breach of duty to the client; and it may constitute a fraud upon the court. See 7A C.J.S.

*Attorney & Client* § 214 a. (1980). See, also, e.g., *Malave v. Carney Hosp.*, 170 F.3d 217 (1st Cir. 1999) (construing federal law); *Garabedian v. Allstates Engineering Co.*, 811 F.2d 802 (3d Cir. 1987) (apparently construing Pennsylvania law); *Blanton v. Womancare Inc.*, 38 Cal. 3d 396, 696 P.2d 645, 212 Cal. Rptr. 151 (1985); *Cross v. Dist. Court In & For 1st Jud. Dist.*, 643 P.2d 39 (Colo. 1982); *Dillon v. City of Davenport*, 366 N.W.2d 918 (Iowa 1985); *Clark v. Burden*, 917 S.W.2d 574 (Ky. 1996); *Hallock v. State*, 64 N.Y.2d 224, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984); *Midwest Federal v. Dickinson Econo-Storage*, 450 N.W.2d 418 (N.D. 1990); *NEET v. Silver Street Partnership*, 148 Vt. 99, 528 A.2d 1117 (1987); *Hays v. Fischer*, 161 Ariz. 159, 777 P.2d 222 (Ariz. App. 1989); *Kazale v. Kar-Lee Flowers*, 185 Ill. App. 3d 224, 541 N.E.2d 219, 133 Ill. Dec. 382 (1989); *Townsend v. Square*, 643 So. 2d 787 (La. App. 1994); *Gojcaj v Moser*, 140 Mich. App. 828, 366 N.W.2d 54 (1985); *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482 (Minn. App. 1990); *Southwestern Bell Yellow Pages v. Dye*, 875 S.W.2d 557 (Mo. App. 1994); *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 703 A.2d 9 (1997); *Royal v. Hartle*, 145 N.C. App. 181, 551 S.E.2d 168 (2001); Annot., 90 A.L.R.4th 326 (1991).

The appellants argue, however, that under Nebraska agency law, Wickenkamp can bind Luethke to a settlement because she acted with apparent authority in her correspondence with Plessman. The appellants cite Nebraska cases where a lawyer acted with apparent authority and, under agency law, bound the client to the lawyer's action. None of these cases, however, involved a lawyer's binding a client to a settlement agreement without that client's express authority. From the nature of the attorney-client relationship itself, a lawyer derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions. See, Code of Professional Responsibility, EC 7-7; *Brennan v. School Dist. No. 21*, 235 Neb. 948, 458 N.W.2d 227 (1990). That authority, however, is hardly absolute. Equally rooted in the law is the principle that without a grant of authority from the client, a lawyer cannot compromise or settle a claim (see Code of Professional Responsibility, EC 7-7), and settlements negotiated by lawyers without authority from their clients are generally not binding. A

narrow exception to this rule occurs when a lawyer settles a claim in excess of actual authority, but *in the presence of his or her client*, generally in open court, and the client remains silent regarding the terms of the settlement. See, e.g., *Hallock, supra*. See, also, *Navajo Tribe v. Hanosh Chevrolet-Buick*, 106 N.M. 705, 749 P.2d 90 (1988); *In re Gibson-Terry and Terry*, 325 Ill. App. 3d 317, 758 N.E.2d 459, 259 Ill. Dec. 336 (2001); *Nelson v Consumers Power Co*, 198 Mich. App. 82, 497 N.W.2d 205 (1993). No such circumstance is present in the instant case.

██ We hold, therefore, that although lawyers retain apparent authority to make procedural and tactical decisions through the existence of the attorney-client relationship, a lawyer cannot settle a client's claim without express authority from the client. In other words, where there has been nothing beyond a mere employment or retainer of the lawyer to represent the client in a cause and the lawyer has acquired no other authority to enter into a settlement (such as acquiescence in open court), if the lawyer seeks to enter a settlement, the opposing party should ascertain whether the lawyer has received actual authority from the client to take such action. A party who enters a settlement agreement without verifying the opposing counsel's actual authority to settle does so at his or her peril.

The appellants argue that preventing lawyers from binding clients to settlement agreements without express authority would create problems in agency law and, in general, disrupt the practice of law. We have, however, already determined that lawyers have apparent authority to manage the conduct of litigation on behalf of a client, including the authority to make many procedural or tactical decisions, without express client consent. See *Brennan, supra*. Deciding that lawyers need express authority in the limited situation of *out-of-court* settlements will not, as the appellants argue, eviscerate the apparent authority of attorneys and agency law principles. In fact, several district courts already have rules which specifically require that in order to be recognized or considered by the court, agreements between parties to a suit, other than those made in open court or otherwise recorded by a court reporter, must be reduced to writing and signed by the parties. See, e.g., Rules of Dist. Ct. of First Jud. Dist. 1-2 (rev. 1995); Rules of Dist. Ct. of Second Jud. Dist. 2-3 (rev. 1995);

Rules of Dist. Ct. of Fifth Jud. Dist. 5-3B (rev. 2001); Rules of Dist. Ct. of Seventh Jud. Dist. 7-3 (rev. 1995).

■ Jurisdictions that require express client authority for a lawyer to settle generally maintain that in the event of a dispute over the lawyer's authority to settle, it is a factual question for the trial court to determine and will not be disturbed absent an abuse of discretion. See *Clark v. Burden*, 917 S.W.2d 574 (Ky. 1996). See, also, *Kansas City Laborers Pension F. v. Paramount Indus.*, 829 F.2d 644 (8th Cir. 1987) (concluding that under federal law, district court abused discretion in failing to conduct hearing on whether attorney had actual authority to consent to settlement). We agree that disputes over a lawyer's authority to settle are factual issues to be resolved by the trial court; however, we will not set aside a trial court's factual findings regarding settlement disputes unless such findings are clearly erroneous.

After reviewing the record, we conclude that the district court did not clearly err in determining that Luethke did not grant express authority to Wickenkamp to compromise or settle his personal injury claim for the sum of $16,000. The record, in fact, would support a finding that Luethke did not authorize Wickenkamp to settle his personal injury claim for $16,000.

Having decided the primary issue in this appeal, we conclude that the appellants' remaining assignments of error are without merit. The appellants had argued that the district court erred in receiving evidence, over a § 7-107(2) objection, pertaining to the settlement agreement at issue. We note briefly that § 7-107(2) does not apply to the present case, because a lawyer's "proper duties and powers" do not include settling a lawsuit without a client's express authority. Moreover, Luethke testified regarding interactions and agreements between himself and Wickenkamp, not about the settlement agreement between Wickenkamp and Plessman. Thus, Luethke's testimony and Schmitt's testimony were properly admitted into evidence, and the court did not err in overruling the appellants' § 7-107(2) objection.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in determining that Wickenkamp could not enter into an out-of-court settlement agreement, and bind her client to the

agreement, without the express authority of Luethke, her client. The judgment of the district court is, therefore, affirmed, and this cause is remanded to the district court for a trial on the merits of the personal injury cause of action.

AFFIRMED, AND CAUSE REMANDED
WITH DIRECTIONS.

McCORMACK, J., not participating.