FRED W. LENNON ET AL., APPELLANTS, V. ED T. KEARNEY
ET AL., APPELLEES.

271 N. W. 351

FILED FEBRUARY 11, 1937.   No. 29813.

*William P. Warner, Sidney T. Frum* and *Robert B. Pike,*
for appellants.

*W. V. Steuteville, contra.*

Heard before GOSS, C. J., ROSE, GOOD, PAINE and CARTER,
JJ., and KROGER, District Judge.

KROGER, District Judge.

This is an action to enjoin repeated trespasses upon and
to quiet the title to certain lands in Dakota county, Ne-
braska. The land involved is a tract of about 35 acres de-
scribed as the north 25 acres of the south half of the south-
east quarter and 10 acres off of the south side of the north
half of the southeast quarter, all in section 28, township
29, range 8, east of the sixth principal meridian in Dakota
county, Nebraska, as shown by Hall's survey and sub-
division of Sioux Point cut-off.

Plaintiffs' claim to said disputed tract is based upon
conveyances from Woodlawn Trust & Savings Bank and
a decree quieting title to the lands in dispute in plaintiff,
entered by the district court for Dakota county on Septem-

ber 8, 1920, in an action in which plaintiffs' predecessor in title, Woodlawn Trust & Savings Bank, was plaintiff, and the defendant Ed T. Kearney was one of the defendants.

Defendants claim the lands in dispute as accretion to riparian land owned by them, and further base their claim on adverse possession for more than 20 years last past, and deny that the decree of the district court for Dakota county entered September 8, 1920, is valid and binding for the reason that defendant Ed T. Kearney had filed an answer in said action and the decree was entered without a trial or evidence being taken and without notice to him, and that the attorney purporting to act for him and consenting to such decree was not authorized to act for him and had no authority to appear in said action on behalf of defendant Ed T. Kearney, and that defendant had no notice or knowledge that decree had been entered in said action until just previous to the filing of the present action; and for further claim allege that they have been in adverse possession of said premises for more than 10 years since the entry of the decree of September 8, 1920, and that their title has now become absolute and ask that their title be quieted in them.

The case was tried to the court and a decree was entered quieting title to the north 25 acres of the south half of the southeast quarter of section 28 in the defendants and quieting the title to 10 acres off the south side of the north half of the southeast quarter in the plaintiffs. From this decree plaintiffs prosecute this appeal and defendants have filed a cross-appeal.

The evidence discloses that defendants trace their title to lots one and two in the southeast quarter of section 28, township 29, range 8, east of the sixth principal meridian, to patents issued by the United States government to their predecessors in title, and that, at the time of the government survey, said lots one and two were bounded on the south by the south section line of said section 28, and on the north by the south bank of the Missouri river, and that said lots at that time contained 54.70 acres. It also appears

that, due to erosion by the Missouri river, said lots one and two were eroded until they contained less than 10 acres; that later, as the result of an evulsion, the Missouri river left its bed and cut a new channel, approximately two miles north of the premises in controversy, and forming what was known as Cut-off lake, which occupied the most southerly portion of the former river bed in said section 28; that later by reason of certain drainage ditches constructed in that neighborhood and certain floods occurring in that territory, Cut-off lake and adjacent low lands to the north were gradually filled with silt, so that when, in the year 1931, an extension of the drainage ditch from Cut-off lake to the present Missouri river channel was constructed, the land in controversy became suitable for agricultural purposes and consequently valuable.

It appears from the evidence that, as early as 1914, efforts were made to make some use of the disputed tract, and defendants' then tenant testified that he had constructed a fence along the approximate line which defendants now contend forms the north boundary of their property, but, in constructing such fence, it was necessary to use a boat in crossing a part of the tract and that the wires were fastened to trees in some places because of water standing on the land. Again, in 1916, another tenant of defendants testified that he had erected a fence along the line claimed by defendants as the north line of their premises.

The first question this court is called upon to determine is the validity of the decree entered September 8, 1920, because, if that decree is valid, it will dispose of any claims of defendants' adverse possession prior to that date.

Defendants' attack on said decree is based on the claim that the attorney purporting to represent them in that action was not authorized to act for them and that they had no knowledge of the entry of such decree.

The attorney in question was called as a witness by plaintiffs and testified positively that he had consulted with defendant Ed T. Kearney prior to defendant's filing his answer, and that later it became necessary to either try

the case or settle it and that he again consulted with defendant, and that defendant was fully advised of the decree both before and after its entry and that in the obtaining of said decree he acted as attorney for defendant Kearney and one other defendant.

"Where an attorney appears in a cause, the presumption is that he has authority and that presumption continues until the want of such authority is established by proof." *Vorce v. Page,* 28 Neb. 294, 44 N. W. 452. And, the burden of proof of such want of authority is upon the party asserting the same. *Connell v. Galligher,* 36 Neb. 749, 55 N. W. 229.

We have carefully examined the evidence in this case and conclude that the defendants have failed to sustain the burden of proof resting upon them, to show that the attorney purporting to act for them was not authorized to do so. It necessarily follows that the decree of September 8, 1920, quieting title in the Woodlawn Trust & Savings Bank to the premises in controversy, was binding upon the defendants in this action.

The defendants, however, contend that, since said decree was entered, they have been in open, notorious, continuous, exclusive and adverse possession of said premises and that their title thereto is now absolute notwithstanding said decree.

The evidence as to adverse possession by defendants since the entry of the decree in 1920 is not satisfactory. Prior to 1929 there was no such occupancy as would be notice to the plaintiffs or their predecessors in title of an intention to claim adversely.

Plaintiffs called, as their witnesses, a number of defendants' tenants who had occupied said premises between 1923 and 1929, and they were all agreed that the only fence along the north line of the land claimed by defendants was a strip of fence, between 20 and 30 rods in length, beginning near the northeast corner of the tract in controversy and running in a westerly direction. From the west end of this strip, the fence at one time during said period extended in a

southerly direction to inclose some cultivated land which the tenant on defendants' land was farming. It also appears from the testimony of these tenants that between 1923 and 1927 there were only between three and seven acres of cultivated land on the disputed tract which was farmed by them. If the fence constructed by defendants' tenants in 1914 and 1916 across the entire north line was still in existence, it had fallen into such a state of disrepair that the subsequent tenants were not aware of its existence. The evidence is quite conclusive that, subsequent to the decree of 1920, no effort was made to maintain a fence for more than 30 rods along the disputed north line and such fence as was maintained was for the purpose of keeping stock off the cultivated lands of defendants' tenants, which arrangement was apparently by agreement between tenants on lands owned by plaintiffs' predecessors in title lying to the north of the disputed tract and the tenants on defendants' lands lying to the south of the disputed tract.

In the case of *Root v. Woolworth,* 150 U. S. 401, appealed to the United States supreme court from the circuit court of the United States for the district of Nebraska, it was held that, where the court has decreed that plaintiff has title to the land as against the defendant and it appears from the proof that the defendant did not reenter after such decree, the statute of limitations does not begin to run and he could not assert adverse possession without bringing express notice to the plaintiff, or his vendees, that he was claiming adversely; that without such notice the length of time intervening between the decree and the institution of the present suit would give him no better right than he previously possessed and his holding possession would be treated as in subordination to the title of the landowner. To the same effect is the case of *Abrams v. Taintor,* 76 Neb. 109, 107 N. W. 225, in which the case of *Root v. Woolworth, supra,* is referred to and followed.

In the case at bar there is no evidence of a reentry and no evidence that the defendants at any time gave notice to the plaintiffs or their predecessor in title of their intention

to occupy said premises adversely after the decree of September 8, 1920. On the contrary, the weight of the evidence would indicate a contrary intention prior to 1929. It necessarily follows that the trial court was in error in quieting title to the north 25 acres of the south half of the southeast quarter of section 28, township 29, range 8, east of the sixth principal meridian, in the defendants.

The judgment of the district court is affirmed in so far as it quieted the title to the ten acres in the plaintiffs, and reversed in all other respects, and remanded, with directions to enter decree in conformity with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.