HEESE PRODUCE COMPANY, APPELLANT, V. ROBERT LUEDERS, APPELLEE.
HEESE PRODUCE COMPANY, APPELLANT, V. DAVID LUEDERS, APPELLEE.

443 N.W.2d 278

Filed July 28, 1989.    Nos. 87-978, 87-979.

Daniel A. Smith, of Stanek & Smith, for appellant.

Charles W. Balsiger, of Jewell, Gatz, Collins, Dreier, Fitzgerald & Balsiger, for appellees.

BOSLAUGH, CAPORALE, and GRANT, JJ., and SPRAGUE and MULLEN, D. JJ.

GRANT, J.

These are consolidated appeals from the district court for Thurston County. Plaintiff-appellant, Heese Produce Company (Heese), filed these actions in the Thurston County Court to collect accounts allegedly due from defendants-appellees, Robert Lueders (case No. 87-978) and David Lueders (case No. 87-979). Defendants each filed a cross-petition, alleging breach of express and implied warranty, negligence, and product liability in an amount exceeding the jurisdictional limit of the county court. The cases were certified to the district court pursuant to Neb. Rev. Stat. § 24-302.01 (Reissue 1985) and were set for trial on April 14, 1987. The district court was informed of a settlement, and the cases were continued.

On April 20, 1987, defendants each filed a "Motion to Confirm Settlement and Enter Judgment Thereon." After an evidentiary hearing on September 2, 1987, the district court sustained defendants' motions and dismissed Heese's petitions and defendants' cross-petitions, with prejudice.

Heese timely appealed to this court, contending the district court erred as a matter of law in finding the parties had entered into an enforceable compromise and settlement agreement and, therefore, in sustaining defendants' motions to confirm settlement and enter judgment thereon. We affirm.

The record shows that these actions were filed by Heese in the Thurston County Court on November 19, 1984, to collect an account allegedly due from Robert Lueders in the amount of $3,202.28 and an account allegedly due from David Lueders in the amount of $4,878.20. The petitions further alleged that the defendants each purchased, on account, chemical and fertilizer

products from Heese and that to secure the indebtedness Heese filed "Notices of Fertilizer Lien on Crops" with the county clerks of Thurston, Cuming, and Wayne Counties.

On March 28, 1985, with the permission of the county court, both defendants filed cross-petitions alleging breach of express and implied warranty, negligence, and product liability in connection with certain herbicides sold to them by Heese. In the cross-petitions, Robert Lueders sought $22,346.80 and David Lueders sought $21,847.92 from Heese "for loss of income due to the decreased yields on [Lueders'] various tracts of real estate, and for incidental and consequential damages." Since the cross-petitions exceeded the jurisdictional limit of the county court, the cases were certified to district court.

On February 26, 1987, defendants filed motions to set the two actions separately for jury trial. On March 12, 1987, the district court set the cases for trial on April 14. The court was informed of a settlement by letter dated March 30, 1987. Each defendant's "Motion to Confirm Settlement and Enter Judgment Thereon" was filed on April 20.

A hearing on the motions was held September 2, 1987. Defendants were represented by Charles Balsiger, and Heese was represented by Stuart Mills and Eric Kruger. Kruger told the court that he also appeared "by a special appearance only" on behalf of Tri-State Insurance Company (Tri-State), Heese's insurance carrier. There was no ruling on this special appearance.

Correspondence regarding the attempted settlement of these matters was admitted in evidence at the September 2 hearing, without objection. Balsiger's March 6, 1987, letter to Kruger and Mills proposed that Heese "dismiss the respective petitions with prejudice and deliver a release of the alleged lien as to each case. In consideration for that action the defendants will dismiss their respective causes of action with prejudice." Balsiger's notes regarding a telephone call from Mills on March 12 indicate that Mills offered "to settle with Lueders jointly for $5000." That is, Heese would settle its claims against both defendants for a payment of $5,000.

Kruger's March 19, 1987, letter to Balsiger and Mills pertaining to defendants' cross-petitions states:

So that there is no misunderstanding, I am of the opinion that the $5,000.00 offered by my client exceeds the value of the counterclaim. This offer is being made, in no small part, based upon the realities of legal expenses going forward.

Accordingly, if Tri-State Insurance Company is required to expend any additional costs in getting this matter ready for trial, the offer will be withdrawn.

Kruger's letter also bears a notation that a copy of the letter was sent to a litigation supervisor at Tri-State regarding its insured, Heese, and the claimants Lueders. The record does not show any communication from Tri-State which pertains to the settlement of Heese's claims against the defendants.

Balsiger and Mills continued settlement negotiations. By letter dated March 25, 1987, Balsiger rejected Mills' March 12 "counterproposal to settle [Heese's claims] in the amount of $5,000," and "submit[ted] a counteroffer to settle for the sum of $2,500.00 payable to Heese Produce forthwith for and in consideration of a dismissal of all claims by both parties against the other, costs taxed to the parties as respectively incurred. Also we would require a release of your crop liens."

Balsiger's notes of March 28, 1987, reflect two telephone conversations with Mills. During the earlier conversation, Mills counteroffered to settle Heese's claims against defendants for $3,000. After advising Robert Lueders of the $3,000 counteroffer, Balsiger telephoned Mills. Balsiger's notes of this conversation indicate that Balsiger "offered to settle at $2800 he accepted, we are to draw the paperwork."

Balsiger's March 30, 1987, confirming letter to Mills and Kruger stated as follows:

This letter will confirm my telephone conferences with Mr. Stuart Mills on the morning of March 28, 1987, concerning settlement of the above referenced cases.

It is our understanding these cases will be dismissed by Heese Produce Company with Prejudice, as to the accounts, and that in consideration of such a dismissal Robert and Dave Lueders shall pay to Heese Produce the sum of $2,800.00 and shall dismiss their counterclaims. In addition Heese Produce will provide a release for the

fertilizer liens claimed against the Lueders [sic].

Enclosed with the March 30 letter were a check from Robert Lueders payable to "Heese Produce & Stuart Mills" in the amount of $2,800, drafts of the documents required to dismiss both cases with prejudice, and draft releases of the fertilizer liens.

Also enclosed with the March 30 letter was a copy of Balsiger's March 30, 1987, letter to the court advising that the cases had been settled.

On April 3, however, Kruger wrote to Balsiger enclosing new drafts of the dismissal documents, a release, and "Tri-State's claim draft in the amount of $5,000.00 which is payable to both of your clients, yourself, and to Heese Produce." The form of release enclosed with Kruger's April 3 letter provided that in consideration of the sum of $5,000, David and Robert Lueders would "forever release, acquit and discharge" Heese from any claims arising out of damage to the Luederses' real property. In other words, the release drafted by Kruger contemplated that the defendants would dismiss their cross-petitions for a settlement of $5,000.

Each defendant's "Motion to Confirm Settlement and Enter Judgment Thereon" was filed on April 20, 1987. In these documents, the defendants alleged that Mills orally accepted their offer "to settle at $2,800.00, payable to [Heese] with mutual dismissals with prejudice and releases of claimed fertilizer liens, each party to pay their respective costs, counsel for the defendants to prepare settlement documents." The motions further alleged that defendants' counsel confirmed the settlement by letter and commenced performance of the settlement by tendering settlement documents and "settlement payment proceeds" of $2,800 to Mills. The motions also alleged:

11. That contemporaneously with, and during the same time that settlement negotiations between plaintiff and defendants was [sic] proceeding, the plaintiff's attorney Stuart Mills, on behalf of the plaintiff Heese Produce, was negotiating a separate matter with Eric Kruger, resulting in substance in an agreement whereby the insurance company insuring plaintiff would pay to plaintiff,

defendants, and defendants' counsel, the sum of $5,000.00 to be endorsed over to plaintiff for and in consideration of the release and discharge of any claim of defendants set forth in defendants' cross-petitions. These negotiations were never disclosed to the defendants or their attorney until after the defendants and plaintiff had reached the settlement previously described in . . . this Motion. Upon disclosure, the latter proposal was rejected by the defendants as beyond the scope of the settlement previously reached with plaintiff.

At the September 2 hearing, the trial court also took judicial notice of an "Application" filed by Mills on August 17. The application sought orders compelling Tri-State to pay into the court the sum of $5,000 and compelling defendants to pay into court the total sum of $2,800, "which sums then should be paid to [Heese] in compromise and settlement of these cases." The application alleged:

1. On or about March 28, 1987, Plaintiff's insurance carrier, Tri-State Insurance, acting through its attorney, Eric Kruger, agreed to pay Plaintiff the sum of $5,000.00 to avoid further exposure on Defendants' counter claims. Plaintiff has demanded that Tri-State Insurance pay the sum of $5,000.00 as agreed, but it has failed and neglected to do so.

2. On or about the same date, Plaintiff and Defendants entered into an oral agreement to compromise and settle these cases. It was agreed that Defendants should pay to Plaintiff the total sum of $2,800.00 in full settlement of both pending cases.

We note that Tri-State was never a party to this action.

On September 15, 1987, the district court entered orders finding that "the parties reached a settlement whereby the defendants . . . would pay to the plaintiff the sum of $2,800.00, that the plaintiff would dismiss the petition with prejudice, and the defendants would dismiss their respective cross-petitions with prejudice and the plaintiff would deliver certain crop releases to the defendants." The court also found that defendants had partially performed the settlement and that the settlement should be approved and the parties ordered to

perform the same. The court also ordered that the petitions and cross-petitions be dismissed with prejudice pursuant to district court rule 16. That rule provides:

> It shall be the duty of attorneys to immediately notify the court of the dismissal, settlement, or other final disposition of any case. Upon notice to the court or to the clerk that an action has been settled, counsel shall file within 30 days thereafter, unless otherwise directed by written order, such pleadings as are necessary to terminate the action; upon failure to do so, the court may order dismissal of the action without further notice and without prejudice to the right to secure reinstatement of the case within 60 days after the date of said order by making a showing of good cause as to why settlement was not in fact consummated.

A settlement agreement is subject to the general principles of contract law. *Fleming Co. of Nebraska v. Michals*, 230 Neb. 753, 433 N.W.2d 505 (1988); *Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982). In a bench trial of an action at law, the factual findings by the trial court have the effect of a jury verdict and will not be set aside unless they are clearly wrong. *Fleming Co. of Nebraska v. Michals, supra.*

In support of its assignments of error, Heese appears to argue that the correspondence offered as evidence of the oral settlement agreement reached by Mills and Balsiger was inadmissible under Neb. Rev. Stat. § 7-107(2) (Reissue 1987), which provides:

> An attorney or counselor has power . . . (2) to bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court . . . .

See, also, *Simmons v. Murray*, 189 Neb. 695, 204 N.W.2d 800 (1973) (Newton, J., dissenting), *overruled, Omaha Nat. Bank v. Mullenax, supra.*

We note that no objections were made by any of the parties to any of the evidence admitted during the September 2 hearing.

In *Anderson v. Walsh*, 109 Neb. 759, 763, 192 N.W. 328, 329 (1923), this court held that the former version of § 7-107(2) "[did] not make an oral contract invalid, but only relate[d] to the character of evidence by which it may be established." The *Anderson* court further stated at 763, 192 N.W. at 329-30:

> All the evidence on the question was received in the district court without objection, and the attorney for plaintiff also testified concerning it, though his testimony did not coincide with that produced for defendants. Had plaintiff made timely objection, the evidence might have been excluded, but, in failing to object, she waived her right to have the contract established by only such evidence as the statute makes competent.
>
> It is incumbent on one, not wishing to be bound by evidence made incompetent by statute, to make timely objection when it is offered. It is too late to raise the objection for the first time in the appellate court.

Since no objection was made to any of the evidence offered during the hearing, Heese's argument is without merit.

Heese further contends the oral settlement agreement was unenforceable under *Omaha Nat. Bank v. Mullenax, supra* at 836, 320 N.W.2d at 758, a quiet title action, where we held:

> An alleged oral compromise and settlement agreement not made in open court is unenforceable where it is in violation of the statute of frauds or in violation of a court rule requiring all stipulations and agreements of counsel or parties to a suit to be in writing, signed by the parties or their attorneys.

In connection with this argument, Heese contends the oral settlement agreement was in violation of the statute of frauds, Neb. Rev. Stat. § 36-202(2) (Reissue 1988), which provides: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: . . . (2) every special promise to answer for the debt, default, or misdoings of another person . . . ."

We have held that where the principal object of a party promising to pay the debt of another is to promote his own interests, and not to become a guarantor or surety, and the

promise is made on sufficient consideration, it will be valid although not in writing. *Branham v. McGinnis*, 203 Neb. 664, 280 N.W.2d 47 (1979); *VSC, Inc. v. Lilja*, 203 Neb. 844, 280 N.W.2d 901 (1979); *Fitzgerald v. Morrissey*, 14 Neb. 198, 15 N.W. 233 (1883). The consideration to support an oral promise to pay the debt of another must operate to the advantage of the promisor (Robert Lueders) and place him under a pecuniary obligation to the promisee (Heese) independent of the original debt (David Lueders' account), which obligation is to be discharged by the payment of that debt. *VSC, Inc. v. Lilja, supra.*

We determine that even if we characterize this situation as a promise by Robert Lueders to Heese that he would pay the debt of David Lueders, such promise was supported by new consideration and does not fall within the statute of frauds. The record shows that the $2,800 check was tendered by Robert Lueders pursuant to an agreement with Heese to settle both his and David Lueders' accounts for that amount. In return, Heese was to dismiss both petitions with prejudice and release the fertilizer liens filed against both defendants' crops. The record supports a finding that Robert Lueders acted primarily to promote his own interests in settling his own account with Heese and procuring the release of liens filed against his own crops. The settlement agreement, therefore, was not within the statute of frauds.

In the alternative, Heese contends the oral settlement agreement was unenforceable under our holding in *Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982), because the oral agreement violated rule 5 of the Uniform Rules for the District Court of the State of Nebraska, adopted on December 2, 1985, by the Sixth Judicial District. That rule provides:

> All stipulations not made in open court or in chambers and recorded by the reporter and all agreements of counsel or parties to a suit, must be reduced to writing and signed by the parties making the same and filed with the clerk, or they will not be recognized or considered by the court.

A copy of the uniform rules was admitted in evidence at the September 2 hearing.

While noncompliance with rule 5 may render an oral settlement agreement unenforceable, *Omaha Nat. Bank v. Mullenax, supra*, such should not be the result in this case. In the application prepared by Mills and filed in the district court on August 17, 1987, Heese specifically alleged that Tri-State agreed to pay Heese $5,000 "to avoid further exposure on Defendants' counter claims." Heese then specifically alleged that it and defendants "entered into an oral agreement to compromise and settle these cases. It was agreed that Defendants should pay to Plaintiff the total sum of $2,800.00 in full settlement of both pending cases."

The following exchange took place at the close of the September 2 hearing:

> MR. MILLS: . . . . [I]t is plaintiff's contention that the settlement that the plaintiff understood it would be receiving, a total of $7,800, and that settlement because of the refusal on the part of Mr. Balsiger's clients, Dave and Robert Lueders to execute the appropriate drafts and releases cannot be made. Therefore, there was no settlement and plaintiff would ask that the matter be scheduled for trial.

> THE COURT: Mr. Mills, as between parties, Heese Produce and David Lueders and Heese Produce and Robert Lueders — as between those parties your agreements and your correspondence with Mr. Balsiger indicates [sic] and your pleadings indicate that it was settled upon payment by the Lueders to your client of $2,800. Is that not correct?

> MR. MILLS: . . . That's correct, Your Honor, but the assumption that his clients would execute whatever releases we felt appropriate we would obviously reciprocate by releasing whatever releases they felt deemed appropriate.

Upon receipt of Balsiger's March 30, 1987, letter and enclosures, neither Mills nor Kruger informed the district court that a settlement had not been reached. Instead, Heese made application to the court for the $2,800 settlement amount.

The record shows that Heese conducted separate negotiations with the defendants on the original petitions and

with Tri-State on the cross-petitions. Heese admitted in its application filed in the district court and Mills admitted at the September 2 hearing that Heese had agreed to settle its claims against the defendants for a total of $2,800.

In *Omaha Nat. Bank v. Mullenax, supra*, we recognized that court rules are related to statutes of fraud but also are based upon additional principles of efficient judicial administration. District court rule 27 provides, "Any of the foregoing rules shall be subject to such modification by the court as may be necessary in special instances to meet emergencies or to avoid injustice or great hardship." In appropriate circumstances where no injustice would result, the district court may exercise its inherent power to waive its own rules. See, e.g., *Raymond v. Ingram*, 47 Wash. App. 781, 737 P.2d 314 (1987).

We determine that the rule 5 requirement that "all agreements of counsel or parties to a suit, must be reduced to writing and signed by the parties making the same" was waived by the trial court and that no injustice resulted from this waiver.

To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Fleming Co. of Nebraska v. Michals*, 230 Neb. 753, 433 N.W.2d 505 (1988). The evidence presented, without objection, at the September 2 hearing supports a finding that the parties reached a settlement agreement whereby defendants would pay to Heese a sum of $2,800, that Heese would dismiss its petitions with prejudice, that defendants would dismiss their cross-petitions with prejudice, and that Heese would deliver certain releases of crop liens to the defendants. Heese's alleged separate negotiations with Tri-State regarding settlement of defendants' claims against Heese do not fall within the scope of this agreement. The findings of the trial court to this effect are not clearly wrong.

The judgment of the district court is affirmed.

AFFIRMED.