JUSTIN S. FURSTENFELD, APPELLANT, V.
LISA B. PEPIN, APPELLEE.
___ N.W.2d ___

Filed August 18, 2015.    No. A-14-814.

1. **Records: Appeal and Error.** A party's brief may not expand the record.
2. **Appeal and Error.** The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief.
3. **Waiver: Appeal and Error.** Errors not assigned in an appellant's initial brief are thus waived and may not be asserted for the first time in a reply brief.
4. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion.
5. **Contracts.** The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.
6. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
7. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
8. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

9. **Appeal and Error.** For an appellate court to consider an alleged error, a party must specifically assign and argue it.

10. ____. Appellate courts do not generally consider arguments and theories raised for the first time on appeal.

11. **Rules of Evidence.** Under Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008), all relevant evidence is admissible unless there is some specific constitutional or statutory reason to exclude such evidence.

12. **Trial: Evidence.** Evidence which is not relevant is not admissible.

13. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

14. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

15. **Evidence: Proof.** For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.

16. **Attorney and Client: Presumptions: Proof.** On the issue of an attorney's authority to make statements on behalf of a client, there is a presumption that the attorney has authority and that presumption continues until the want of such authority is established. The burden of proof of such want of authority is upon the party asserting the same.

17. **Trial: Evidence: Appeal and Error.** To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded.

18. **Attorneys at Law: Witnesses.** When a party seeks to disqualify an opposing attorney by calling that attorney as a witness, the court must strike a balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case.

19. **Attorneys at Law: Testimony: Proof.** The party moving to disqualify an opposing attorney bears the burden of establishing that the attorney's testimony will be necessary.

20. **Trial: Attorneys at Law: Witnesses: Evidence.** A party seeking to call opposing counsel can prove that counsel is a necessary witness by showing that (1) the proposed testimony is material and relevant to the determination of the issues being litigated and (2) the evidence is unobtainable elsewhere.

21. **Contracts.** A settlement agreement is subject to the general principles of contract law.

22. **Contracts: Compromise and Settlement.** To have a settlement agreement, there must be a definite offer and an unconditional acceptance.
23. **Attorney and Client: Compromise and Settlement.** The decision to settle a lawsuit belongs to the client; because the client bears the risk when settling or refusing to settle a dispute, it is the client, not the lawyer, who should assess whether the risk is acceptable.
24. \_\_\_\_: \_\_\_\_. Although lawyers retain apparent authority to make procedural and tactical decisions through the existence of the attorney-client relationship, a lawyer cannot settle a client's claim without express authority from the client.
25. **Attorney and Client: Compromise and Settlement: Appeal and Error.** Disputes over a lawyer's authority to settle are factual issues to be resolved by the trial court, and an appellate court will not set aside a trial court's factual findings regarding settlement disputes unless such findings are clearly erroneous.
26. **Rules of the Supreme Court: Child Support.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.
27. **Rules of the Supreme Court: Child Support: Stipulations.** Stipulated agreements of child support are required to be reviewed against the Nebraska Child Support Guidelines.
28. \_\_\_\_: \_\_\_\_: \_\_\_\_. If the court approves a stipulation which deviates from the Nebraska Child Support Guidelines, specific findings giving the reason for the deviation must be made.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Terrance A. Poppe, Benjamin D. Kramer, and Andrew K. Joyce, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

Lisa B. Pepin filed a complaint to modify the parenting time and support provisions of a decree of dissolution. During the ensuing litigation, Pepin and her former husband,

Justin S. Furstenfeld, engaged in settlement negotiations and Pepin believed an oral settlement agreement had been reached. Furstenfeld later refused to sign a stipulation memorializing the oral agreement, and Pepin filed a motion to enforce. The district court granted Pepin's motion to enforce, and Furstenfeld appeals. Finding no merit to Furstenfeld's arguments, we affirm.

## II. FACTUAL BACKGROUND

[1] At the outset, we must pause to observe that Furstenfeld's brief contains no fewer than 18 separate assertions which were not annotated to the record presented to this court. He acknowledges as much at the end of each such statement by noting the assertion is not in the record. Pepin has objected to Furstenfeld's characterization of the factual background of the case and correctly notes that a party's brief may not expand the record. See *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). Within our factual background, we will only include those facts which are supported by the record presented to this court.

In December 2010, Pepin and Furstenfeld's marriage was dissolved pursuant to a decree of dissolution. An amended decree was entered on January 21, 2011. While these decrees are not in our record, the district court's order in this proceeding indicates that the initial decree approved the parties' property settlement, custody agreement, and support agreement and that the amended decree corrected errors in two provisions of this agreement. On August 30, Pepin filed an amended complaint for modification of the decree, seeking an increase in Furstenfeld's child support obligation and a modification or suspension of his parenting time with the parties' minor child. The district court originally set a trial date of May 21, 2012, for Pepin's complaint for modification.

On May 16, 2012, Pepin; Pepin's attorney, Terrance Poppe; and Furstenfeld's attorney, Matt Catlett, met at Poppe's office to conduct a telephonic deposition of Furstenfeld. At the

time, Furstenfeld was residing at an out-of-state rehabilitation facility. Instead of conducting a deposition, however, the parties, through their attorneys, engaged in settlement negotiations and an apparent agreement was reached. After reaching this agreement, Poppe and Catlett jointly contacted the district court judge to notify the court of the agreement and to remove the matter from the court's trial calendar. Poppe proceeded to prepare a stipulation containing the terms of the parties' agreement.

Furstenfeld refused to sign the stipulation Poppe prepared. On June 18, 2012, Pepin filed a motion to enforce the settlement agreement. Specifically, her motion stated that she sought to enforce "the oral agreement reached by the parties on May 21, 2012." The court held a hearing on Pepin's motion on April 7, 2014.

At the hearing, Pepin testified that she attended a meeting at her attorney's office on May 16, 2012. During the meeting, Pepin learned from Poppe that Catlett was also present that day in another conference room within the office; Pepin did not personally interact with Catlett. At the end of this meeting, Pepin understood that a solid agreement had been reached and both attorneys were to call the judge and advise the court that the matter had been settled. Pepin further testified that Poppe prepared a stipulation for modification of decree that same day which was consistent with the terms of the oral agreement that had been reached earlier in the day. Over Furstenfeld's objection, the court received a copy of the stipulation into evidence.

The stipulation for modification of decree provided, in pertinent part, that Furstenfeld's child support obligation would increase to $3,000 per month commencing June 1, 2012. The stipulation stated that a Nebraska child support calculation worksheet was attached and incorporated, although the copy of the stipulation received in evidence did not contain the worksheet. The stipulation also provided that Furstenfeld's obligation to pay 80 percent of employment-related daycare

expenses would terminate on May 31, 2012; that he would remain obligated to provide health insurance for the parties' minor child; and that he would also pay the first $480 of any health care expenses for the minor child which were not covered by health insurance and 80 percent of those uncovered expenses thereafter. The stipulation further stated that the minor child's image would not be used for any purpose by Furstenfeld's band and that the child would not attend any of Furstenfeld's concerts without Pepin's prior approval. Other provisions included within the stipulation provided that Furstenfeld would pay $2,500 toward Pepin's attorney fees, that certain orders to show cause would be vacated, and that the parties would not make disparaging or derogatory comments about the other through various means of communication.

Following Pepin's testimony, Poppe called Catlett as a witness to testify in order to provide foundation for an e-mail regarding the oral settlement agreement and to establish that Catlett and Furstenfeld engaged in communications during the May 16, 2012, meeting. Catlett objected to being called as a witness and cited a number of Nebraska authorities which he believed established that an attorney does not have authority to bind a client to an agreement simply because the attorney had been retained by the client. The court overruled the objection and permitted Pepin to question Catlett on a limited basis. After determining it would allow Catlett to testify, the court permitted Furstenfeld to obtain other counsel. Furstenfeld elected to represent himself.

Catlett acknowledged that on May 15, 2012, he sent an e-mail to Poppe which contained the terms on which Furstenfeld offered to settle the case. The next day, Catlett arrived at Poppe's office to conduct a telephonic deposition of Furstenfeld. Catlett confirmed that settlement negotiations ensued, an agreement was reached, and he and Poppe contacted the court to inform it that the matter had been settled. Later that day, Catlett received an e-mail from Poppe's

assistant which stated that it included the stipulation for modification of decree based on the agreement reached that morning. The e-mail further stated that Poppe would "work up" a child support calculation that "matches" the $3,000 figure to attach to the stipulation. Catlett sent the following response to Poppe's assistant:

> I believe this accurately reflects the agreement. I'll send to [Furstenfeld], and once he returns to me the executed original, I will get it to [Poppe]. The trial date has been removed from the judge's calendar, so we're not under a rush, although I think we told the judge we'd get it to him for approval by the end of next week. Neither party will need to appear since we're not changing custody or parenting time.

During his testimony, Catlett also stated that he could not remember whether the attachment to the e-mail was the same document he was reviewing during his testimony. Catlett further remarked that he recalled certain aspects of the stipulation, but did not recall others. However, he did not have any reason to believe that the proposed stipulation entered into evidence was not the same document which was attached to the e-mail on May 16, 2012.

On cross-examination, Catlett stated that his client had not given him the right to sign off on anything. Later in the hearing, Furstenfeld testified that he did not authorize Catlett to make the settlement offer contained in the May 15, 2012, e-mail.

On July 31, 2014, the district court entered an order finding that the parties had entered into a binding settlement agreement on May 16, 2012. The court determined that this agreement unconditionally resolved all material terms of the dispute. The court further found that the proposed stipulation which had been entered into evidence at the hearing accurately reflected the terms of the parties' agreement. Finally, the court approved the terms of the stipulation, finding them to be fair, reasonable, not unconscionable, and in the best

interests of the parties' minor child. The court directed Poppe to prepare an order consistent with the stipulation, including child support calculations, for the court's approval.

On August 29, 2014, the court signed and filed the order Poppe prepared. A child support worksheet was attached to that order.

Furstenfeld has appealed.

### III. ASSIGNMENTS OF ERROR

Furstenfeld assigns four errors. He asserts the district court erred when it (1) received certain exhibits into evidence, (2) permitted Pepin to call Catlett as a witness, (3) sustained Pepin's motion to enforce, and (4) incorporated into its order a child support calculation worksheet which was unsupported by evidence.

[2,3] Furstenfeld also includes an additional assignment of error in his reply brief. For the first time, he assigns as error and argues that the district court should not have permitted Pepin to present oral testimony at the hearing. We will not address this argument because it was not raised in Furstenfeld's initial brief. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Errors not assigned in an appellant's initial brief are thus waived and may not be asserted for the first time in a reply brief. *Id*.

### IV. STANDARD OF REVIEW

[4] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

[5] The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to

reach an independent, correct conclusion irrespective of the determinations made by the court below. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000).

[6-8] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## V. ANALYSIS

### 1. EQUITABLE ESTOPPEL

In the first argument section of his brief, Furstenfeld asserts the district court should have applied the principles of equitable estoppel to overrule Pepin's motion to enforce. He reasons that Pepin effectively withdrew her motion to enforce the May 16, 2012, agreement when she continued to litigate her modification action after filing the motion to enforce. Furstenfeld highlights the fact that Pepin filed numerous motions after her motion to enforce which included an amended motion to take Furstenfeld's deposition, a motion to release Furstenfeld's medical records, a motion regarding parenting time during Christmas 2013, and a motion to suspend Furstenfeld's parenting time. Pepin argues that we should not address this argument because Furstenfeld did not raise the issue of equitable estoppel before the district court.

[9,10] Furstenfeld has not properly preserved this issue for appeal. First, we observe that he does not assign error to this issue in his brief. For an appellate court to consider an alleged error, a party must specifically assign and argue it.

*Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015). Even if we generously assume that this argument somehow relates to one of the four errors Furstenfeld has assigned, this issue was not presented to the district court at the hearing on the motion to enforce. At the hearing, Furstenfeld argued against Pepin's motion to enforce on the ground that Catlett did not have authority to enter into the settlement agreement. Nothing remotely resembling the doctrine of equitable estoppel was raised as an issue at the hearing. As has long been the case, appellate courts do not generally consider arguments and theories raised for the first time on appeal. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015); *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011); *Tolbert v. Jamison*, 281 Neb. 206, 794 N.W.2d 877 (2011).

### 2. EVIDENCE AT HEARING ON MOTION TO ENFORCE

In his first assigned error, Furstenfeld attacks the district court's evidentiary rulings regarding three separate exhibits. He argues the court should not have received into evidence an e-mail message sent May 15, 2012, from Catlett to Poppe, the proposed stipulation, or a January 2014 letter from Poppe addressed to Catlett. We separately analyze each exhibit below.

### (a) May 15, 2012, E-mail

At the hearing, Pepin sought to introduce a copy of an e-mail Poppe received from Catlett. This e-mail indicated Furstenfeld's willingness to settle the case and included six settlement terms. Furstenfeld objected to the court's receipt of this exhibit on relevance and hearsay grounds. The district court overruled Furstenfeld's objections and stated that it would receive only the portions of the exhibit which were admissible and only for a limited purpose. On appeal, Furstenfeld maintains his contention that this e-mail was irrelevant and hearsay.

[11-14] Under Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008), all relevant evidence is admissible unless there is some specific constitutional or statutory reason to exclude such evidence. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Evidence which is not relevant is not admissible. *Id*. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id*. A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008).

[15] We find this exhibit to be relevant to the determination of this action. Pepin asserted that she and Furstenfeld reached a settlement agreement; Furstenfeld denied that an agreement had been reached and also argued that Catlett never had authority to enter into a settlement agreement or engage in settlement negotiations. Clearly, this exhibit has some probative value relating to the issue of whether Catlett had authority to enter into a settlement agreement or engage in settlement negotiations. For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). The district court did not abuse its discretion when it determined this exhibit was relevant.

Furstenfeld also claims this e-mail is hearsay because Catlett did not have authority to act as his agent and make statements on his behalf. Neb. Evid. R. 801(4)(b), Neb. Rev. Stat. § 27-801(4)(b) (Reissue 2008), provides in relevant part that a statement is not hearsay if

[t]he statement is offered against a party and is (i) his own statement, in either his individual or a representative capacity, . . . (iii) a statement by a person authorized by

him to make a statement concerning the subject, or (iv) a statement by his agent or servant within the scope of his agency or employment . . . .

There is no dispute that Pepin was offering the statements in the e-mail against Furstenfeld.

[16] Since this e-mail was offered against Furstenfeld, the next question is whether the statements made within the e-mail were made by Catlett while he was acting within the scope of his agency or employment. We note that Catlett states within the e-mail that Furstenfeld authorized him to make the offer. However, in his brief, Furstenfeld argues that this statement should have no bearing on the issue of whether Catlett actually had authority to make statements on his behalf. On the issue of an attorney's authority to make statements on behalf of a client, the Nebraska Supreme Court has held that when an attorney appears in a cause, there is a presumption that the attorney has authority and that presumption continues until the want of such authority is established. See, *Lennon v. Kearney*, 132 Neb. 180, 271 N.W. 351 (1937); *Nichols Media Consultants v. Ken Morehead Inv. Co.*, 1 Neb. App. 220, 491 N.W.2d 368 (1992). The burden of proof of such want of authority is upon the party asserting the same. *Id*.

We find no merit to Furstenfeld's arguments that his testimony that Catlett was not authorized to make any statements on his behalf was sufficient to rebut the presumption of such authority. The court's order demonstrates that it determined Furstenfeld's testimony on this issue was not conclusive. Rather, the court found the evidence established that Catlett was authorized to act on his behalf. There was no error in this determination, and this exhibit was not hearsay.

Furstenfeld's arguments relating to the court's receipt of this exhibit in evidence are without merit.

### (b) Proposed Stipulation

Furstenfeld also asserts that the district court should not have received the proposed stipulation into evidence because

it was not relevant. He focuses on the fact that Pepin's motion stated that the parties had reached a settlement agreement on May 21, 2012, whereas she testified at the hearing that the agreement was reached on May 16. Therefore, he argues the proposed stipulation was irrelevant because it did not tend to prove or disprove the fact that the parties reached an agreement on May 21. In response, Pepin states that this discrepancy in date was clearly recognized by the parties at the hearing and that Furstenfeld did not raise this discrepancy as an issue.

Furstenfeld's arguments are not persuasive. It is quite clear from the record that Pepin sought to enforce the settlement agreement she believed the parties reached on May 16, 2012. The date discrepancy was not raised at the hearing, and there is nothing in the record which demonstrates that this discrepancy was material to the outcome of the case. The proposed stipulation exhibit was clearly relevant to the issue of whether the parties had reached an oral settlement agreement prior to trial.

### (c) January 16, 2014, Letter

Furstenfeld's final evidentiary challenge relates to the court's receipt of the January 16, 2014, letter Poppe sent to Catlett. In this letter, Poppe stated that he intended to call Catlett as a witness at the hearing on the motion to enforce if Furstenfeld continued to refuse to execute the proposed stipulation. Poppe offered this letter as evidence at the hearing and informed the court that he was offering this letter to reflect that he had attempted to avoid calling Catlett as a witness, but had no other choice. Other than Poppe's statements to the court, Pepin did not provide any other foundation for this exhibit.

[17] For the sake of argument, we will assume that Furstenfeld correctly argues that the court's receipt of this exhibit constituted error on the basis of relevance. However, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial

right of a litigant complaining about evidence admitted or excluded. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). Furstenfeld cannot show the admission of this letter into evidence prejudiced a substantial right because the district court did not rely upon this exhibit in ruling upon Pepin's motion. In fact, this exhibit is not even mentioned in the court's order. This assigned error is without merit.

### 3. Pepin's Calling Catlett
#### as Witness

Furstenfeld also assigns error to the district court's decision to permit Pepin to call Catlett as a witness at the hearing. He asserts that it was not necessary for Pepin to call Catlett as a witness to prove that an oral agreement was reached. According to Furstenfeld, the court's decision to allow Catlett's testimony and then subsequently rely on that testimony to sustain Pepin's motion "rigged" the game in Pepin's favor. Brief for appellant at 23.

[18-20] When a party seeks to disqualify an opposing attorney by calling that attorney as a witness, the court must strike a balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case. See *Beller v. Crow*, 274 Neb. 603, 742 N.W.2d 230 (2007). The party moving to disqualify an opposing attorney bears the burden of establishing that the attorney's testimony will be necessary. *Id*. A party seeking to call opposing counsel can prove that counsel is a necessary witness by showing that (1) the proposed testimony is material and relevant to the determination of the issues being litigated and (2) the evidence is unobtainable elsewhere. *Id*.

The record from the hearing on the motion to enforce reveals that the district court allowed Pepin to question Catlett on a "very limited" basis. Specifically, Pepin sought to establish foundation for the e-mail Catlett sent to Poppe regarding the parties' agreement and to establish that Furstenfeld engaged

in telephone communication with Catlett on May 16, 2012, during the settlement negotiations.

We find no error in the district court's determination to allow Pepin to question Catlett on a limited basis. Catlett's testimony was material to the issues being litigated. Pepin demonstrated to the court that Catlett's testimony would confirm the authenticity of the e-mail sent to Poppe regarding the proposed stipulation and would also establish that Furstenfeld participated in settlement negotiations through telephone communication. The record reveals there was no other witness who could provide this evidence. Because Pepin established that Catlett's testimony was material and relevant to the litigated issues and could not be obtained elsewhere, the district court correctly permitted the questioning.

Furstenfeld also argues that Neb. Rev. Stat. § 7-107 (Reissue 2012) prohibited Catlett from testifying to establish the existence or terms of the agreement. The relevant portion of § 7-107 provides:

> An attorney or counsel has power: . . . (2) to bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court . . . .

Furstenfeld contends that the language "statement of the attorney himself" should only apply to statements made in open court that there is an agreement to settle and recitations of the agreement's terms. In other words, he concludes an attorney's testimony is not permitted under the statute. He asserts that Catlett never made such a statement during the hearing.

In support of his arguments, Furstenfeld relies upon two cases, *Heese Produce Co. v. Lueders*, 233 Neb. 12, 443 N.W.2d 278 (1989), and *Luethke v. Suhr*, 264 Neb. 505, 650 N.W.2d 220 (2002). We have closely reviewed these cases

and determine that neither case squarely addresses the issue of whether an attorney's testimony as a witness satisfies the statutory language cited above. *Heese Produce Co.* discusses, among other issues, the failure to object to written correspondence adduced to prove the existence of a settlement agreement. *Luethke* primarily discusses when, and under what circumstances, a lawyer may bind his or her client to a settlement agreement entered into without express authority from the client.

Upon our review, we agree with the district court's conclusion that a settlement agreement may be established by the testimony of the attorney of the party sought to be bound. The plain language of § 7-107 supports such a result. See *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013) (absent statutory indication to contrary, appellate court gives words in statute their ordinary meaning). We further note that attorney testimony was received in *Luethke v. Suhr, supra*, in an attempt to establish the existence of a settlement agreement. This assigned error is without merit.

### 4. SUFFICIENCY OF EVIDENCE ON
### MOTION TO ENFORCE

In addition to the previous errors discussed above, Furstenfeld also argues there was not sufficient evidence for the district court to sustain Pepin's motion to enforce the agreement. He focuses his discussion on the fact that Pepin could not produce any direct evidence to establish that Furstenfeld had given Catlett express authority to enter into the settlement agreement. We reject this argument.

[21,22] Nebraska case law establishes that a settlement agreement is subject to the general principles of contract law. See *Woodmen of the World Life Ins. Soc. v. Kight*, 246 Neb. 619, 522 N.W.2d 155 (1994). To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Heese Produce Co. v. Lueders, supra*.

[23-25] Nebraska law is clear that the decision to settle a lawsuit belongs to the client; because the client bears the risk when settling or refusing to settle a dispute, it is the client, not the lawyer, who should assess whether the risk is acceptable. See *Luethke v. Suhr, supra*. Although lawyers retain apparent authority to make procedural and tactical decisions through the existence of the attorney-client relationship, a lawyer cannot settle a client's claim without express authority from the client. *Id*. Disputes over a lawyer's authority to settle are factual issues to be resolved by the trial court, and an appellate court will not set aside a trial court's factual findings regarding settlement disputes unless such findings are clearly erroneous. See *id*.

In this case, the district court's order reviewed the evidence adduced at the hearing and found that Catlett had authority to settle the case on Furstenfeld's behalf. The evidence at the hearing established that Furstenfeld and Catlett were in telephone communication during the negotiations on May 16, 2012. After these negotiations, Catlett and Poppe jointly informed the court, without any qualifications, that the matter had been settled. Thereafter, Catlett sent an e-mail response to Poppe's proposed stipulation in which he stated the proposed stipulation accurately reflected the parties' agreement. Catlett further testified at the hearing that he did not have any reason to believe the proposed stipulation was not the same document he reviewed 2 years prior to the hearing.

The court also specified in its order that it did not find Furstenfeld's testimony determinative on the issue of whether Catlett had been given authority to settle. In effect, this finding was a determination that Furstenfeld's testimony was not as credible as Pepin's evidence.

Having reviewed the record, we conclude the district court did not clearly err in determining that Furstenfeld granted Catlett the necessary authority to settle the modification action. The record contains sufficient evidence for the district court to have sustained Pepin's motion to enforce.

### 5. Child Support

For his final assignment of error, Furstenfeld claims the district court erred when it adopted Poppe's child support calculations in its August 29, 2014, order. He broadly asserts that there is no legal significance to any agreement that purports to establish or modify a child support obligation.

[26-28] In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). Stipulated agreements of child support are required to be reviewed against the guidelines. *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 837 N.W.2d 553 (2013). If the court approves a stipulation which deviates from the guidelines, specific findings giving the reason for the deviation must be made. *Id.*

The child support worksheet attached to the August 29, 2014, order shows gross monthly income for Pepin of $1,250 and for Furstenfeld of $35,000; with respective net incomes of $1,101.08 and $22,740.09, for a total of $23,841.17 combined net monthly income. The total obligation of child support for the parties combined net monthly income is $2,201; with the father's share at $2,099. In addition, a "Section 4-203(C) Additional Support Worksheet (Optional)" is attached which sets forth the net monthly combined income above $15,000 at $8,841.17. This worksheet then sets the additional support pursuant to Neb. Ct. R. § 4-203(C) (rev. 2011) at $884.12, resulting in Furstenfeld's final share of $2,943.

Section 4-203(C) of the child support guidelines provides in part:

> [I]f total net income exceeds $15,000 monthly, child support for amounts in excess of $15,000 monthly may be more but shall not be less than the amount which would be computed using the $15,000 monthly income unless other permissible deviations exist. To assist the court and not as a rebuttable presumption, the court may use the amount at $15,000 plus: 10 percent of net income above $15,000 for one, two, and three children; 12 percent of

net income above $15,000 for four children; 13 percent of net income for five children; and 14 percent of net income for six children.

The worksheet adopted by the court complied with the provisions of § 4-203(C) as the additional support was 10 percent of Furstenfeld's net income above $15,000. While there is no evidence in the record regarding the parties' incomes at the time of the amended decree or the hearing on the motion to enforce, the parties agreed in the stipulation that Furstenfeld's child support obligation would be increased to $3,000 and that a child support calculation worksheet would be attached. The child support calculation worksheets attached to the court's order are consistent with the guidelines, and we can find no abuse of discretion in the court's adoption of the stipulation and the child support worksheets.

## VI. CONCLUSION

The district court did not err when it concluded that Pepin and Furstenfeld had reached a settlement agreement. We affirm the court's order.

Affirmed.